IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MELISSA BEAM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:19-cv-01201-M-BT |
| | § | |
| CALIBER HOME LOANS, INC., et al. | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this removed civil action is Defendants TIAA FSB d/b/a Everbank (Everbank) and Caliber Home Loans, Inc.'s (Caliber's, together the "Caliber Defendants'") Motion for Summary Judgment (ECF No. 50). As explained in these Findings, Conclusions, and Recommendation, the Court should GRANT Caliber Defendant's Motion and DISMISS with prejudice all of Plaintiff's claims against Everbank and Caliber.

## Background

This case arises out of the foreclosure and sale of Plaintiff Melissa Beam's home in Dallas, Texas (the "Property"). Beam purchased the Property in November 2013 with an FHA loan (the "Mortgage") from First National Bank of Trenton (First National). *Beam Decl.*, Pl.'s App., pt. 1, at 1. (ECF No. 52-1). As part of that transaction, Beam executed a note (Note), payable to First National, and a deed of

trust (DOT) to secure the payment of the Note. Beam Decl. 1; Pl.'s App., pt. 1, at 12-24.

In February 2018, Beam's Mortgage was transferred to Everbank, and Caliber became the loan servicer. Beam Decl. 2. Beam was falling behind on her Mortgage and failed to pay her monthly installments on the Note in May and June of 2018. Defs.' App., pt. 3, at 3, 11, 14, 18 (ECF No. 52-3). In August, she applied for loss mitigation assistance (the "2018 LMA") and, in October, Caliber notified her that she would be considered for a loan modification, pending completion of a trial period plan (TPP). *Id.* pt. 5, at 3-7 (ECF No. 52-5); Beam Decl. 2; Pl.'s App., pt. 1, at 25-31. But in December 2018, Caliber notified Beam that she was no longer eligible for loan modification because she had not complied with the terms of the TPP. Beam Decl. 3; Pl.'s App., pt. 1, at 34-35. Caliber also returned her subsequent payment because the amount was insufficient. Beam Decl. 3; Pl.'s App., pt. 1, at 36. Beam disputes that she failed to comply with the TPP. Beam Decl. 4.

Beam contacted Caliber to ask what she should do to avoid foreclosure. Beam Decl. 3. Caliber instructed her to submit another loss mitigation application (LMA). *Id.* Beam submitted a second LMA in February 2019 (the "2019 LMA"), and Caliber confirmed to her that Caliber received the application. *Id.* Beam heard nothing further from Caliber until March 2019 when Caliber informed her that she was entitled to the surplus from a foreclosure sale. *Id.* at 4.

Caliber foreclosed on the Property on March 5, 2019 and sold the Property to Defendant Ecliptic Homes, LLCs (Ecliptic) at a trustee's sale. *Id.*; *see id.* pt. 2, at

66-67 (ECF No. 57-2). Ecliptic subsequently filed a forcible detainer suit and obtained a judgment against Beam. Beam Decl. 4. When Beam successfully appealed, Ecliptic filed a second forcible detainer suit. *Id.* Ecliptic again prevailed and obtained a judgment against Beam, which Beam appealed.[1] *Id.* Beam is still in possession of the Property. *Id.* at 1.

Beam filed this suit against Caliber and Ecliptic in County Court at Law Number 1 of Dallas County, Texas, in April 2019. Caliber timely removed the case to federal court, with Ecliptic's consent, on the basis of federal question jurisdiction because Beam asserted a claim for violations of the Real Estate Settlement Procedures Act (RESPA) against Caliber. Notice of Removal 2 ¶ 5 (ECF No. 1). With leave of court, Beam amended her complaint to join Everbank as a defendant. Pl.'s 1st Am. Compl. (ECF No. 26).

In her Second Amended Complaint (ECF No. 46), which is the live pleading, Beam alleges Caliber engaged in prohibited "dual tracking" in 2019 when Caliber pursued foreclosure of the Property while simultaneously considering Beam for loss mitigation options. Pl.'s 2d Am. Compl. 8-9 ¶¶ 36-39. Caliber also allegedly failed to properly review Beam's 2019 LMA, failed to communicate with her about any deficiencies in her 2019 LMA or alternatively notify her it had denied the 2019

---

[1] Beam's appeal is abated, pending the outcome of this litigation. *Ecliptic Homes, LLC v. Beam,* Tex. Cnty. Ct. at Law No. 3, CC-19-07148-C (Feb. 11, 2020) (unpublished order).

LMA, and failed to inform her about her right to appeal the denial of her 2019 LMA, all in violation of RESPA. Pl.'s 2d Am. Compl. 8-11 ¶¶ 40-48.

Beam also asserts claims against Caliber and Everbank for breach of contract, violations of the Texas Debt Collection Practices Act (TDCA), and to set aside the foreclosure sale and cancel the trustee's deed to Ecliptic.[2] *See id.* at 11-20 ¶¶ 51-87. Regarding her breach-of-contract claims, Beam alleges that her Mortgage is an FHA loan and therefore any default under the DOT is limited by regulations promulgated by the U.S. Department of Housing and Urban Development (HUD). *Id.* at 11 ¶ 52. Beam avers Caliber Defendants breached the DOT by failing to comply with various HUD regulations, including regulations that require a lender: (i) to conduct a face-to-face interview with the borrower or make a reasonable effort to arrange such a meeting before three full monthly installments due on the mortgage go unpaid, *see* 24 C.F.R. § 203.604(b); (ii) to inform the borrower of other available assistance before attempting to foreclose, *see id.* § 203.604(e)(2); and (iii) to accept partial payments and apply those payments to the borrower's account or hold the partial payments in trust pending disposition of the account, *see id.* § 203.556(b). Pl.'s 2d Am. Compl. at 12 ¶ 58. Beam further avers Caliber Defendants violated § 51.0075(e) of the Texas Property Code because the Notice of Sale listed the address of the law firm rather than the substitute trustee. *Id.* at 13

---

[2] Beam also asserts a claim for a declaratory judgment against Ecliptic that it is not a bona fide purchaser of the Property. Pl.'s 2d Am. Compl. 20-21 ¶¶ 89, 93-95. Ecliptic has filed a separate motion to dismiss this claim. (ECF No. 53).

¶ 60. Regarding her claims under the TDCA, Beam alleges Caliber Defendants made fraudulent, deceptive, or misleading representations in violation of sections 392.204(a)(8) and (19) and 392.301(a)(8) of the Texas Finance Code. *Id.* at 16-17 ¶¶ 71-75. Beam contends she is entitled to set aside the foreclosure sale and cancel the trustee's deed to Ecliptic because Caliber Defendants failed to strictly comply with the HUD regulations and provisions of the Texas Property Code incorporated into the DOT. *Id.* at 19-20 ¶¶ 85-86,

Caliber Defendants deny that Caliber engaged in dual tracking, or that they breached the DOT's terms or violated RESPA, HUD regulations, Texas Property Code, or TDCA. They further contend that Beam is not entitled to have the foreclosure sale set aside or cancel the trustee's deed. Caliber Defendants filed a motion for summary judgment as to all of Beam's claims against them. The parties fully briefed the motion, and it is ripe for determination.

## Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citations omitted). The movant can satisfy this burden by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial

burden, the nonmovant must show summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); FED. R. CIV. P. 56(e)).

The party opposing the summary-judgment motion must identify specific evidence in the record and state the precise way that evidence supports the party's claim. *Esquivel v. McCarthy*, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). "Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Id.* (citing *Ragas*, 136 F.3d at 458; *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7, 915-16 (5th Cir. 1992)). All evidence must be viewed in the light most favorable to the party opposing the summary-judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)).

## Analysis

1. Caliber is entitled to summary judgment on Beam's RESPA claim.

   a. *Caliber did not foreclose in violation of 12 C.F.R. § 1024.41(g).*

Caliber moves for summary judgment on Beam's claim that it violated RESPA by engaging in prohibited "dual tracking" in 2019. *See* Pl.'s 2d Am. Compl. 7-8 ¶¶ 36-39. Specifically, Beam alleges that she contacted Caliber after it returned

6

her TPP payment in December 2018 "to discuss her options to avoid foreclosure." *Id.* at 7 ¶ 36. "On February 14, 2019, a Caliber representative instructed Ms. Beam to submit another LMA by February 18. Ms. Beam did so." *Id.* "Despite several follow-ups on February 18, 2019 and February 28, 2019, the next thing that Ms. Beam knew was that her home has been sold to Ecliptic Homes at the March 5, 2019 foreclosure sale." *Id.* ¶ 37. Beam contends "[t]his is a classic situation of 'dual tracking'" because "Caliber was allegedly working out options with Ms. Beam to avoid foreclosure, and it even advised Ms. Beam to submit another loan modification application. *Yet, it foreclosed anyway.*" *Id.* at 8 ¶¶ 38-39 (emphasis in original).

Dual tracking occurs when a lender "actively pursues foreclosure while simultaneously considering the borrower for loss mitigation options." *Gresham v. Wells Fargo Bank, N.A.*, 642 F. App'x 355, 359 (5th Cir. 2016) (per curiam). Section 1024.41(g) prohibits dual tracking, and § 1024.41(a) expressly provides for a private right of action if a lender engages in prohibited dual tracking. 12 C.F.R. § 1024.41(g); *Gresham*, 642 F. App'x at 359. But § 1024.41(g) prohibits foreclosure only when a borrower submits a complete loss mitigation application more than 37 days before a foreclosure sale. 12 C.F.R. § 1024.41(g); *Gresham*, 642 F. App'x at 359.

In this case, there is no competent summary-judgment evidence to show that Beam submitted her 2019 LMA more than 37 days before the March 5, 2019 foreclosure sale. To the contrary, Beam submitted a declaration admitting that she

submitted the 2019 LMA on February 15, 2019—only 18 days before the scheduled foreclosure. Beam Decl. 3. The Court should therefore conclude that Beam has failed to raise a genuine fact issue to support her claim that Caliber violated § 1024.41(g) by engaging in prohibited dual tracking.

> b. *Caliber was not required to comply with 12 C.F.R. §§ 1024.41(c), (d), or (h) for Beam's 2019 LMA.*

Caliber also moves for summary judgment on Beam's claims that it violated RESPA by failing to properly review her 2019 LMA, failing to communicate with her about any deficiencies in her 2019 LMA or alternatively notify her it had denied the 2019 LMA, and failing to notify her about her right to appeal the denial of her 2019 LMA. *See* Pl.'s 2d Am. Compl. ¶¶ 40-48. Caliber argues that these claims fail because the 2019 LMA was Beam's second LMA and she has been delinquent since she submitted her first LMA in 2018. *Harris Decl.*, Defs.' App., pt. 1, at 13 ¶ 20.

Section 1024.41 describes the procedures that mortgage servicers must follow when processing LMAs. *See generally* 12 C.F.R. § 1024.41. The regulations apply "*unless* the servicer has previously complied with the requirements of [§ 1024.41] for a complete [LMA] submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete [LMA]." 12 C.F.R. § 1024.41(i) (emphasis added). Here, the uncontroverted summary-judgment evidence establishes that the 2019 LMA was at least the second LMA Beam submitted. Indeed, Beam admits she first applied for loss mitigation assistance in 2018. Beam Decl. 2. Indeed, she was approved for a TPP. *Id.* She further admits

8

she "downloaded, completed, and submitted *another* loss mitigation application . . . on February 15, 2019." *Id.* at 3 (emphasis added). Beam does not allege—much less adduce evidence—that Caliber failed to satisfy the § 1024.41 requirements for the 2019 LMA.

The summary-judgment evidence is also insufficient to raise a genuine fact issue as to whether Beam brought her loan current after submitting her 2018 LMA. Beam was delinquent on her Mortgage by June 2018. *See* Defs.' App., pt. 3, at 11-13, 14-15, 18-31. Caliber sent her an LMA in July. *Id.* at 18-31. Beam submitted the LMA to Caliber on August 23, 2018, and Caliber confirmed receipt on August 27, 2018. *Id.* pt. 4, at 2-27, 29-30 (ECF No. 52-4). Then, on September 12, 2018,[3] after "careful review of the information [Beam] provided," Caliber offered Beam an "opportunity to enter into a conditional TPP" as a "first step toward qualifying for more affordable mortgage payments or more manageable terms" (Offer). *Id.* pt. 5, at 3. The TPP required three equal payments of $1,837.84 due on October 1, November 1, and December 1, 2018. The Offer provided:

> **We must receive each payment in the month in which it is due. If you miss a payment or do not fulfill any other terms of your [TPP], this offer will end and your mortgage loan will not be modified . . . .**

*Id.* at 4 (emphasis in original). The Offer was explicit "acceptance and posting of your payment during the [TPP] will not [waive] the acceleration of your loan

---

[3] The letter is dated September 11, 2018, but the letter was post-marked by the USPS on September 12, 2018. *See* Defs.' App., pt. 5, at 2.

and . . . the right to resume or continue foreclosure actions if you fail to comply with the terms of the [TPP] and *shall not constitute a cure of your mortgage default*." *Id.* (emphasis added).

Caliber received Beam's first payment on October 29, 2018. *Id.* pt. 6, at 2 (ECF No. 52-6).[4] Caliber received Beam's second payment on December 3, 2018. *Id.* at 4. Beam's check for the second payment is dated November 26, 2018, but Caliber provides a sworn statement that the check was received on December 3, 2018. *Id.* pt. 1, at 7. And the summary-judgment record contains a copy of the check stamped "received" and deposited on December 3, 2018. *Id.* pt. 6, at 4. Beam sent Caliber a third check in December 2018, but Caliber returned it with a letter explaining that the payment was insufficient to cure the default and foreclosure commenced. Beam Decl. 2-3; Pl.'s App., pt. 1, at 34; Defs.' App., pt. 6, at 22.

In response to Caliber's evidence, Beam offers only her self-serving, conclusory statement that "[a]ll of my payments were timely *made*." Beam Decl. 2. Beam conspicuously does not offer any statement or other evidence that *Caliber received* her second payment in November, the month it was due. Nor does she point to any evidence to show she brought her loan current after she submitted her 2018 LMA. Her self-serving, conclusory statement is insufficient to create a triable issue of fact as to whether Caliber was required to comply with § 2041.41 for her

---

[4] The payment was made by check. Defs.' App., pt. 6, at 2. The check was dated October 4, 2018. *Id.* However, Caliber provides a sworn statement that the check was received on October 29, 2018. *Id.* pt. 1, at 7. And Caliber stamped received and deposited the check on October 29, 2018. *Id.* pt. 6, at 2.

2019 LMA. *See Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 389 (5th Cir. 2020) (holding self-serving, conclusory statements insufficient to raise genuine fact issues sufficient to avoid summary judgment). The Court should therefore find Caliber is entitled to summary judgment on Beam's claims under §§ 1024.41(c), (d), or (h).

> c. *Caliber is entitled to summary judgment on any claim that Caliber violated RESPA in connection with the 2018 LMA because Beam did not plead such a claim.*

In her response to Caliber's summary-judgment motion, Beam argues Caliber dual tracked when it actively pursued foreclosure by its June 2018 default notice to Beam. However, Beam made no such allegation in her Second Amended Complaint. *Compare* Pl.'s Resp. Br. 14-15 (ECF No. 56), *with* Pl.'s 2d Am. Compl. 6-8. A court can disregard "a theory of liability asserted in the plaintiff's [summary-judgment] response that was not pleaded as required" in her complaint. *See, e.g., Hoffman v. L&M Arts*, 838 F.3d 568, 576 (5th Cir. 2016). Accordingly, the Court should not consider whether Caliber dual tracked in response to Beam's 2018 LMA and find Caliber is entitled to summary judgment on all of Beam's RESPA claims, as pleaded in her Second Amended Complaint.

2. <u>Caliber Defendants are entitled to summary judgment on Beam's breach-of-contract claims.</u>

Beam claims Caliber Defendants breached the DOT by failing to comply with HUD regulations incorporated into the DOT, including 24 C.F.R. § 203.604(b) (requiring mortgagee or servicer to conduct a face-to-face interview with the

borrower or make a reasonable effort to arrange such a meeting before three full monthly installments due on the mortgage went unpaid); 24 C.F.R. § 203.604(e)(2) (requiring mortgagee to inform borrower of other available assistance); and 24 C.F.R. § 203.556(b) (requiring mortgagee to accept partial payments and apply them to the borrower's account or hold the partial payments in trust pending disposition of the account). Pl.'s 2d Am. Compl. 11-14. Beam further claims that Defendants breached the DOT by violating § 51.0075(e) of the Texas Property Code, which requires that the notice of sale must include the name and street address for a trustee or a substitute trustee. *Id.* Beam further contends she incurred damages as a result of Defendant's alleged breaches, including loss of her home and loss of time and money spent trying to stop the foreclosure sale.

Texas courts have identified four essential elements of a breach-of-contract claim: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (emphasis in original); *see also Landrum v. Devenport*, 616 S.W.2d 359, 361 (Tex. App.—Texarkana 1981, no writ). Defendants argue there is no genuine fact issue with respect to the third and fourth elements.[5]

---

[5] Defendants also contend that HUD regulations do not create a private right of action, even when incorporated into a DOT. Defs.' Br. 32-33. While HUD regulations do not impose an independent legal duty on a mortgagee to a mortgagor, a violation of HUD regulations can form the basis of a breach-of-

a. *Beam fails to establish a genuine issue of material fact with respect to her claim under § 203.604(b).*

A mortgagee or its servicer must make a "reasonable effort to arrange" a face-to-face meeting with the borrower "before three full monthly installments due on the mortgage are unpaid." 24 C.F.R. § 203.604(b). "A reasonable effort to arrange a face-to-face meeting with" the borrower consists of a minimum of one certified letter sent to the borrower and at least one trip to see the borrower "at the mortgaged property." 24 C.F.R. § 203.604(d).

Beam first defaulted on her Mortgage in 2017. Defs.' App., pt. 1, 3-4 ¶¶ 5-6; *see id.* at 37-38, 40-41. On July 28 and August 29, 2017,[6] Caliber sent Beam certified letters that provided notice her account was past due, directions to remit payment or contact Caliber, a request to arrange a face-to-face interview, and information about assistance programs. *Id.* On December 12, 2017, Caliber sent a

---

contract claim if the parties expressly incorporate the regulations into their contract. *Del Rio Trejo v. Bank of Am., N.A.*, 2020 WL 982004, at *4 (N.D. Tex. Jan. 21, 2020) (Rutherford, J.) (citing *Smith v. JPMorgan Chase Bank, N.A.*, 519 F. App'x 861, 864 (5th Cir. 2013)); *Baker v. Countrywide Home Loans, Inc.*, 2009 WL 1810336, at *3 (N.D. Tex. June 24, 2009); *Mitchell v. Chase Home Fin. LLC*, 2008 WL 623395, at *3 (N.D. Tex. Mar. 4, 2008); *Leggette v. Wash. Mut. Bank, FA*, 2005 WL 2679699, at *3 (N.D. Tex. Oct. 19, 2005). In this case, Beam claims HUD regulations are incorporated into the DOT because the DOT expressly states it is "*limited by regulations issued by the Secretary [of HUD]*, in the case of payment defaults." Pl.'s 2d Am. Compl. 11 (emphasis in original). The DOT also states, "[i]n many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of defaults . . . . This Security Instruments does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary." *Id.* at 39.
[6] The letters are dated July 26 and August 25, 2017, but the letters were certified through the United States Postal Service (USPS) on July 28 and August 29, 2017, *respectively*. Defs.' Br. 12; *see* Defs.' App., pt. 1, at 37-38, 40-41.

representative to the Property to attempt to arrange a face-to-face interview with Beam. *See id.* pt. 2, at 91-92. When Beam did not answer the knock on the door, Caliber's representative left sealed correspondence containing the same information provided in the certified letters at the Property. *See id.*

Beam also failed to make her Mortgage payments on May 1 and June 1, 2018. *Id.* at 5 ¶ 9. On June 20, 2018, Caliber sent Beam a certified letter that was a "notice of default" stating "[f]ailure to cure the default on or before [July 25, 2018] will result in acceleration of the sums secured by the [s]ecurity [i]nstrument and sale of the property." Defs.' App., pt. 3, at 3. The letter also noted Caliber "offers consumer assistance programs designed to help resolve delinquencies and avoid foreclosures" and provided toll-free numbers to call for borrowers that were unable to bring their account current. *Id.* at 4. On June 25, 2018, Caliber sent a representative to the Property to arrange a face-to-face interview with Beam. *Id.* at 8-10. This time Beam was at the Property and accepted sealed correspondence from Caliber's representative. *Id.* The correspondence invited Beam to schedule a face-to-face interview. *Id.* On June 27 and July 10, 2018, Caliber again sent certified letters to Beam requesting a face-to-face interview. *Id.* at 11-12, 14-15. Beam never responded. She also never cured her default, and ultimately, Defendants foreclosed on March 5, 2019. Beam does not dispute any of these facts. Therefore, the uncontroverted summary-judgment evidence shows that Caliber did not breach the DOT by failing to make a reasonable effort to arrange a face-to-face meeting before Beam was more than three months' behind on her Mortgage.

14

Beam argues Defendants are not entitled to summary judgment on her § 203.604(d) claim because they fail to establish when the "three-month clock" began. Pl.'s Resp. Br. 24 ¶ 25. This argument is inapposite. Several courts have explicitly determined that strict compliance with a three-month window is not required. *See, e.g., Donahue v. Fed. Nat'l Mortg. Assoc.*, 2019 WL 2176939, at *7 (D. Mass. May 20, 2019), *aff'd*, 980 F.3d 204 (1st Cir. 2020) (citing cases); *see also, e.g., Grimaldi v. U.S. Bank Nat'l Ass'n*, 2018 WL 1997277, at *3 (D.R.I. Apr. 27, 2018) (holding that visiting property of defaulted borrower five years after default and leaving a letter because borrower was not home satisfied requirement of making a reasonable effort at arranging face-to-face meeting).

Further, there is no evidence that Beam suffered damages resulting from any alleged breach of the § 203.604(d) requirement for Caliber to make a reasonable effort to arrange a face-to-face meeting. Beam submitted her first LMA in August 2018. Defs.' App., pt. 4, 2-27. Caliber reviewed it and approved her for a TPP in September 2018, and the parties entered into the TPP in October 2018. *Id.* at 29-30; *Id.* pt. 5, at 2-9, 11-17. Thus, Beam secured an opportunity to cure her default without a face-to-face interview. Caliber foreclosed on the Property when Beam failed to comply with the TPP. *Frazier Decl.*, Defs.' App., pt. 7, at 3-4 ¶¶ 5-9 (ECF No. 52-7). Any damages Beam suffered resulted from her failure to comply with the TPP. Accordingly, the Court should dismiss Beam's breach-of-contract claims related to § 203.604(b).

> b. *Beam fails to establish a genuine issue of material fact with respect to her claim under § 203.604(e)(2).*

Section 203.604(e)(2)(ii) requires a mortgagee to "[i]nform the mortgagor of other available assistance, *if any*." 24 C.F.R. § 203.604(e)(2)(ii). Caliber Defendants' summary-judgment evidence shows they informed Beam of various mitigation opportunities, but ultimately, she was not eligible for assistance, other than the TPP. The certified letters Caliber sent Beam on June 27 and July 10, 2018, informed her of some of the loss mitigation programs for which she may qualify, including informal forbearance/repayment plan, formal forbearance plan, HUD's Federal Housing Administration Home Affordable Modification Program (FHA-HAMP), special forbearance plan, pre-foreclosure sale (short sale) or short payoff, and deed in lieu of foreclosure. Defs.' App., pt. 3, at 11-12, 14-15. Additionally, Caliber's letter offering Beam the TPP specifically informed Beam that she qualified for assistance under HAMP and explained why she was ineligible for other programs. Specifically, the Offer states:

> Based on a careful review of the information you provided, we are offering you an opportunity to enter into a conditional [TPP] under the FHA, HUD's Federal Housing Administration "Home Affordable Modification Program" (HAMP). This is the first step toward qualifying for more affordable mortgage payments or more manageable terms. It is important that you read this information in its entirety so that you completely understand the actions you need to take to successfully complete the Trial Period Plan and permanently modify your mortgage.

*Id.* pt. 5, at 3. It further states:

> **You were not approved for other loss mitigation alternatives**

Based on our review of your financial circumstances, you are approved for a FHA HAMP [TPP]. As a result, you are ineligible for other loss mitigation programs for the following reason:

| Product | Denial Reason |
|---|---|
| FHA Formal Forbearance | Insufficient Income. 85% of your surplus income is insufficient to bring the account current within 180 days. |
| FHA Special Forbearance | Ineligible Borrower. We are unable to offer you a Special Forbearance because you are not unemployed or are not receiving unemployment compensation. |

You were not evaluated based on other eligibility requirements.

You were evaluated for mortgage[-]payment assistance based on the eligibility requirements of FHA, HUD's Federal Housing Administration. These requirements for determining borrower eligibility for a loss mitigation alternative include the use of a hierarchy[-]evaluation approach. This is where borrowers are evaluated for programs in a specific order that is determined by the investor/owner of your loan. As a result, a borrower who is eligible for a loss mitigation program higher in the hierarchy order, is ineligible for a loss mitigation program lower in the hierarchy, to the extent applicable.

*Id*. at 5-6 (emphasis in original).

Beam does not identify any particular "other assistance" program that was available to her and which Defendants did not mention. Instead, she zeros in on the single sentence, "You were not evaluated based on other eligibility requirements," and cursorily asserts this establishes there is a genuine issue of material fact as to whether Defendants informed her of other available assistance. Pl.'s Resp. Br. 15. But Beam ignores that the Offer specifically states that she was

considered for FHA Formal Forbearance and Special Forbearance and explains why she is ineligible for other assistance. The summary-judgment evidence is sufficient to meet Defendant's initial summary-judgment burden. Beam cannot cherry pick statements and take them out of context to satisfy her burden to show summary judgment is not proper. The Court should therefore grant Caliber Defendant's motion with respect to Beam's breach-of-contract claims related to § 203.604(e).

> c. *Beam fails to establish a genuine issue of material fact with respect to her claim under § 203.556(b).*

Section 203.556(b) provides that the "mortgagee shall accept any partial payment." 24 C.F.R. § 203.556(b). However, the regulations also provide that "[i]f the mortgage is in default, a partial payment may be returned to the mortgagor with a letter of explanation . . . [w]hen payment aggregates less than 50 percent of the amount then due," and the first action required for "[f]oreclosure has been commenced." *Id.* at § 203.556(d).

In this case, the summary-judgment evidence shows Beam was in default on her Mortgage and entered into the TPP in October 2018 as part of her efforts to cure her default. But she failed to comply with the terms of the TPP. Caliber did not receive a payment from her as required in November. Therefore, Caliber accelerated the payments due on the Note and commenced foreclosure proceedings against the Property. Harris Decl. 7-9 ¶¶ 14-17; Defs.' App., pt. 6, at 4. Caliber received a payment in December 2018, but it was less than 50% of the total

accelerated amount due. Harris Decl. 9-10 ¶ 18; Defs.' App., pt. 6, at 18-20, 22. Therefore, Caliber returned Beam's December payment and provided a letter explaining that it was insufficient to cure the default and foreclosure commenced. Caliber thus complied with § 203.556(d), and it did not breach the DOT by failing to comply with § 203.556(b).

Beam argues that the TPP was "still active" in December, and Beam tendered the required monthly amount for December under the TPP. Pl.'s Resp. Br. 17. As explained above, Beam's self-serving, conclusory statements are insufficient to create a fact issue as to whether the TPP was "still active." Beam offers no competent summary-judgment evidence to show she was not in default on her Mortgage or that Caliber canceled the TPP and initiated foreclosure proceedings in early December. Caliber was entitled to return the payment Beam sent in December as it constituted a partial payment that was less than 50% of the accelerated loan balance. The Court should dismiss Beam's claims under § 203.556(b).

### d. Beam failed to establish a genuine issue of material fact under § 51.0075(e).

Under § 51.0075(e) of the Texas Property Code, the notice of sale must disclose the "name and a street address for a trustee or substitute trustee." TEX. PROP. CODE § 51.0075(e). A business address for any of the substitute trustees can be used. *Henderson v. U.S. Bank Tr. Nat'l Ass'n*, 2020 WL 2736530, at *3 (N.D. Tex. May 23, 2020); *see Berg v. Bank of Am., N.A.*, 2012 WL 12886433, at *7 (W.D.

Tex. Sept. 19, 2012); *see also Alsobrook v. GMAC Mortg., LLC*, 2012 WL 1643220, at *7 (N.D. Tex. Apr. 13, 2012).

Here, the summary-judgment evidence shows that Caliber engaged foreclosure counsel and scheduled the foreclosure sale on March 5, 2019. Frazier Decl. 3-4 ¶¶ 4-7. Caliber appointed its foreclosure counsel as substitute trustee on December 14, 2019. *Id.*; Defs.' App., pt. 7, at 7-8. On December 18, 2018, Caliber's foreclosure counsel sent a certified letter to Beam. Frazier Decl. 3 ¶ 6; Defs.' App., pt. 6, at 12-13; *id.* pt. 7, at 10-12. The letter notified Beam that the Note was in default, she failed to cure the default, and the default accelerated the maturity of the debt. *Id.* pt. 6, at 12-13; *id.* pt. 7, at 10-12. The letter enclosed a "Notice of Substitute Trustee Sale." Frazier Decl. 3 ¶ 6;  Defs.' App., pt. 6, at 14; *id.* pt. 7, at 10-12. The Notice listed the scheduled foreclosure date, time, and place, and it identified foreclosure counsel as the substitute trustee and provided the firm's business address. Frazier Decl. 3-4 ¶ 6; Defs.' App., pt. 6, at 14; *id.* pt. 7, at 10-12.

Caliber Defendants also offer a declaration from the foreclosure-counsel law firm's Foreclosure Oversight Attorney for Texas. Frazier Decl. Based on her personal knowledge, the Oversight Attorney states that the Notice of Sale is a business record of the law firm, contains the names of substitute trustees, is signed by one of the substitute trustees, is notarized, and contains the firm's address under the substitute trustee's signature. *Id.* at 2-4 ¶¶ 3, 4, 10. She specifically states "[t]he address listed below the names of the substitute trustees on the Notice of Substitute Trustee Sale ["Notice of Sale"] is [the firm's] address at which each of

the substitute trustees could be contacted by Plaintiff." *Id.* at 4 ¶ 8.  Beam argues the Oversight Attorney's statement is conclusory and insufficient to establish there is no genuine issue of material fact as to whether the address provided for the substitute trustee strictly complies with § 51.0075(e). Beam's argument is without merit. It is clear from the face of the Notice itself that the Notice strictly complied with § 51.0075(e) because it disclosed the name and a street address for the substitute trustee. *Henderson*, 2020 WL 2736530, at *3.

Caliber Defendants are entitled to summary judgment on Beam's claims for breach of contract based on any violation of § 51.0075(e).

3. <u>Caliber Defendants are entitled to summary judgment on Beam's TDCA claims</u>.

Beam asserts Caliber Defendants violated provisions of the TDCA. Pl.'s 2d Am. Compl. 14-18. Specifically, Beam alleges Caliber Defendants (a) violated § 392.304(a)(8) when they noticed and proceeded with the foreclosure sale while Beam was still making payments under the TPP; (b) violated § 392.304(a)(19) when they canceled the TPP while she was making payments, misled Beam into submitting the 2019 LMA, and then failed to review the 2019 LMA; and (c) violated § 392.301(a)(8) when they conducted the foreclosure sale absent a valid contractual right to foreclose. Pl.'s 2d Am. Compl. 14-18. Caliber Defendants respond that noticing acceleration and foreclosure does not violate the TDCA when a borrower is in default of the Note and the TPP; that they were not required to consider the 2019 LMA and offered evidence that it was unopenable; and that they

had a valid contractual right to foreclose because Beam was in default and breached the TPP. Defs.' Br. 41-47. Defendants move for summary judgment on these claims, arguing Beam fails to raise a genuine fact issue as to Beam's TDCA claims.

The TDCA prohibits debt collectors from using threats, coercion, or other wrongful practices in the collection of consumer debts. *Gomez v. Wells Fargo Bank, N.A.*, 2010 WL 2900351, at *3 (N.D. Tex. July 21, 2010); *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986). To prevail on a claim under the TDCA, a plaintiff must plead and prove that: (1) the debt at issue is a consumer debt; (2) the defendant is a 'debt collector' within the meaning of the TDCA; (3) the defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as result of the defendant's wrongful act." *Brinkley v. PennyMac Loan Servs., LLC*, 2018 WL 6004309, at *6 (N.D. Tex. Oct. 22, 2018) (citing TEX. FIN. CODE §§ 392.001 *et seq.*).

> a. *Beam failed to establish a genuine issue of material fact under § 392.304(a)(8).*

Section 392.304(a)(8) of the TDCA "prohibits a debt collector from using a fraudulent, deceptive, or misleading misrepresentation that employs certain enumerated practices in attempting to collect a debt or obtain consumer information." *Flores v. PennyMac Loan Servs., LLC*, 2019 WL 4720977, at *4 (N.D. Tex. Sept. 4, 2019) (Rutherford, J.) (citing TEX. FIN. CODE § 392.304(a)(8)). To qualify as a violation under the TDCA, "the debt collector's misrepresentation

"must have made an *affirmative statement* that was false or misleading." *Id.* (quoting *Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015) (emphasis in original) (internal quotations and citations omitted)); *Robinson v. Wells Fargo Bank, N.A.*, 576 F. App'x 358, 363 (5th Cir. 2014) (citations omitted). To prevail, a plaintiff must demonstrate the debt collector made a false or misleading statement that "led [her] to think differently with respect to the character, extent, amount, or status of [her] debt." *Cantu v. Freedom Mortg. Corp.*, 2021 WL 356840, at *5 (N.D. Tex. Jan. 4, 2021) (Rutherford, J.) (quotations omitted) (quoting *Miller v. BAC Home Loan Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013)).

Beam asserts Caliber misrepresented to her that she had defaulted on her loan and misrepresented the amount owed when she was pursuing the 2019 LMA. And as explained above, there is no genuine dispute that Beam defaulted on her Mortgage and failed to cure her default. Although Defendants gave Beam an opportunity to cure her default through the TPP, there is no genuine dispute Beam breached the TPP. Defendants thus accelerated the maturity date of her Mortgage. When she was seeking the 2019 LMA, Beam owed the entire amount due under the Mortgage. There simply is not a genuine issue of material fact that Caliber misrepresented that she had defaulted on her loan or the amount she owed in February 2019. Accordingly, the Court should dismiss Beam's claims based on § 392.304(a)(8).

> b. *Beam failed to establish a genuine issue of material fact on her claim under § 392.304(a)(19).*

Section 392.304(a)(19) of the TDCA is a catch-all provision that prohibits a debt collector from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Cantu*, 2021 WL 356840, at *6 (internal quotations omitted) (citing TEX. FIN. CODE § 392.304(a)(19)); *Brinkley*, 2018 WL 6004309, at *9). "To violate the TDCA using a misrepresentation, the debt collector must have made an *affirmative statement* that was false or misleading." *Cantu*, 2021 WL 356840, at *6 (internal quotations omitted) (quoting *Verdin v. Fed. Nat'l Mortg. Ass'n*, 540 F. App'x. 253, 257 (5th Cir. 2013)). Generally, "[c]ommunications in connection with the renegotiation of a loan do not concern the collection of a debt but, instead, relate to its modification and thus they do not state a claim under Section 392.304(a)(19)." *Thompson*, 783 F.3d at 1026 (citing *Singha v. BAC Home Loans Serv., L.P.*, 564 F. App'x 65, 70-71 (5th Cir. 2014)).

Here, Caliber informed Beam it canceled the TPP after she failed to comply with its terms. Beam sent Caliber a second LMA in February 2019 in response to Caliber's invitation to do so. These communications were to renegotiate her mortgage loan default—not to collect a debt. Even if the communications were made to collect a debt, Caliber never made an affirmative statement that was false or misleading. There is no genuine fact issue that Beam failed to comply with the TPP or that Caliber canceled it. There likewise is no evidence that Caliber

represented to Beam that a second LMA submission would avoid foreclosure. Therefore, Caliber Defendants are entitled to summary judgment on Beam's claims under § 392.304(a)(19).

      *c. Beam failed to establish a genuine issue of material fact on her claim under § 392.301(a)(8).*

The TDCA also prohibits debt collectors from using "threats, coercion, or attempts to coerce" by means of "threatening to take an action prohibited by law." TEX. FIN. CODE § 392.301(a)(8); *Cantu*, 2021 WL 356840, at *5. However, "foreclosure, or the threat of foreclosure, is not an action prohibited by law when a plaintiff has defaulted on [her] mortgage." *Id.* (quotations omitted) (quoting *Wildy v. Wells Fargo Bank, N.A.*, 2012 WL 5987590, at *3 (N.D. Tex. Nov. 30, 2012)); *see Clark v. Deutsche Bank Nat'l. Tr. Co.*, 2015 WL 4093948, at *12 (N.D. Tex. July 7, 2015); *see also Burr v. JPMorgan Chase Bank, N.A.*, 2012 WL 1059043, at *7 (S.D. Tex. Mar. 28, 2012); *Watson v. Citimortgage, Inc.*, 2012 WL 381205, at *8 (E.D. Tex. Feb. 3, 2012).

In this case, there is no genuine dispute that Beam was in default on her Mortgage and failed to comply with the TPP. Under the DOT, Caliber Defendants had the legal right to foreclose on the Property under those circumstances. Therefore, Beam is not entitled to relief under § 392.301(a)(8) because threatening to foreclose and proceeding with foreclosure are permitted by the TDCA. Accordingly, Caliber Defendants are entitled to summary judgment on Beam's claims under Beam's claims under § 392.301(a)(8).

4. <u>Caliber Defendants are entitled to summary judgment on Beam's claim to set aside foreclosure and cancel the trustee's deed.</u>

Beam seeks rescission of the foreclosure sale and cancelation of the substitute trustee's deed. Pl.'s 2d Am. Compl. 19-20; Pl.'s Resp. Br. 28-29. Beam argues the foreclosure sale was conducted in violation of the DOT and must be voided. Pl.'s Resp. Br. 28-29. Caliber Defendants contend the DOT was not violated and, regardless, Beam's claim is one for wrongful foreclosure which has no merit. Defs.' Br. 47-50; Defs.' Reply 11.

If a foreclosure sale was conducted in violation of the DOT, the foreclosure sale is void. *Hous. First Am. Sav. v. Musick*, 650 S.W.2d 764, 768-69 (Tex. 1983). Here, Beam argued Caliber Defendants violated the DOT by failing to comply with various HUD and Texas Property Code regulations. But as explained above, Caliber Defendants are entitled to summary judgment on Beam's breach-of-contract claims. Therefore, Beam has failed to raise a genuine issue as to whether the foreclosure was void. The Court should dismiss Beam's claim to set aside the foreclosure sale and cancel the trustee's deed.

The Court should pretermit consideration of Caliber Defendants' argument that Beam's claim to set aside foreclosure and cancel the trustee's deed is a claim for wrongful foreclosure.

5. <u>Caliber Defendants are entitled to summary judgment on Beam's request for damages and other remedies.</u>

Beam requested an accounting, injunctive relief, specific performance, actual damages, exemplary damages, and attorneys' fees. Pl.'s 2d Am. Compl. 22-

26

24. Because the Court should grant summary judgment in favor of Caliber Defendants and dismiss Beam's claims against them, the Court also should grant Caliber Defendants summary judgment on Beam's claims for damages, other remedies, and fees.

### Recommendation

The Court should GRANT Caliber Defendants' summary-judgment motion (ECF No. 50) and DISMISS with prejudice all of Plaintiff Melissa Beam's claims against TIAA FSB d/b/a Everbank and Caliber Home Loans, Inc.

**SO RECOMMENDED**.

September 7, 2021.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

27

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).